UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
POPPIES INTERNATIONAL, INC. and
DELIZZA, INC.,

                        Plaintiffs,

     -against-

ABEL & SCHAFER, INC.,

                        Defendant.
----------------------------------------------------------------X
ABEL & SCHAFER, INC.,

                        Third-Party Plaintiff,

     -against-

VALLEY MILK PRODUCTS, LLC,

                        Third-Party Defendant.
----------------------------------------------------------------X

**ORDER**
18-CV-1795(SJF)(SIL)

FEUERSTEIN, District Judge:

I.    Introduction

On March 23, 2018, plaintiffs Poppies International, Inc. ("Poppies") and Delizza, Inc. ("Delizza") (collectively, "plaintiffs") commenced this action against defendant Abel & Schafer, Inc. ("A&S") pursuant to this Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). On June 18, 2018, plaintiffs filed an amended complaint against A&S seeking, *inter alia*, damages for A&S's alleged breach of contract and the implied warranty of merchantability. Issue was joined by the service of an answer on behalf of A&S on July 31, 2018. On October 11, 2018, A&S filed a third-party complaint against third-party defendant Valley Milk Products, LLC ("Valley Milk") seeking contribution and indemnification. Pending before the Court is

1

plaintiffs' motion for summary judgment on their claims against A&S pursuant to Rule 56 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, plaintiffs' motion is denied.

II.     Background

    A.     Factual Allegations[2].

Poppies is a food manufacturing company operating in Battleboro, North Carolina, (Plf. 56.1)[3], which produces and sells frozen dessert pastries, including mini eclairs and mini cream puffs filled with a dairy-based custard filling, for nationwide distribution, including through its affiliate Delizza. (*Id.*, ¶¶ 2, 4, 7-8).

---

[1] Although A&S served a cross motion for summary judgment on its claims against Valley Milk pursuant to Rule 56 of the Federal Rules of Civil Procedure, it never filed the cross motion with the Court.

[2] The factual allegations are taken from the materials in the record that would be admissible in evidence, *see*, Fed. R. Civ. P. 56(c)(1), and the parties' statements pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule 56.1"), to the extent that they are properly supported pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. *See* Local Civil Rule 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."); *New World Sols., Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 305 (S.D.N.Y. 2015) ("[I]f a party fails to properly support a statement by an adequate citation to the record, the Court may properly disregard that assertion."); *F.D.I.C. v. Hodge*, 50 F. Supp. 3d 327, 343, n. 2 (E.D.N.Y. 2014) ("Statements without citation to evidence may be properly ignored by the court."); *Kaur v. New York City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 322 (S.D.N.Y. 2010) ("Where there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion.") Moreover, only those facts that are material to the disposition of the motions, *i.e.*, that "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), are set forth herein. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" (brackets in original) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505)). The facts are undisputed unless otherwise indicated.

[3] Where the facts are undisputed, plaintiffs' Statement of Material Undisputed Facts pursuant to Local Civil Rule 56.1 and the response of A&S thereto are collectively cited as "56.1 Stat." Where the facts are disputed and properly supported pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, plaintiffs' 56.1 Statement is cited as "Plf. 56.1", A&S's response thereto is cited as "A&S 56.1" and Valley Milk's Statement of Additional Material Facts is cited as "VM 56.1."

Delizza is a food sales company that sells Delizza-branded food products to supermarkets and other food retail sellers throughout the United States. (Plf. 56.1, ¶ 3). Poppies packages all frozen dessert pastries that it sells to Delizza in Delizza-branded packaging, (Plf. 56.1, ¶ 6); and Delizza sells the pastries manufactured by Poppies to supermarkets and other food retailers. (*Id.*).

A&S's business consists, in part, of producing and selling certain food products, such as, *inter alia*, bread mixes, muffins, dough conditioners, glazes, cremes, and fillings, which are intended to be used by third parties in the production of food products, (56.1 Stat., ¶¶ 16-17), and are used as ingredients and incorporated into finished food products that are later sold to the public. (*Id.*, ¶ 17; *see also* A&S 56.1, ¶ 18).

One of the ingredients Poppies uses for the custard filling in its mini eclairs and mini cream puffs is "Natural Instant Pastry Creme," which is sold to it by A&S. (Plf. 56.1, ¶ 9; *see also* A&S 56.1, ¶¶ 9, 14, 41, 43-47, 49, 53-55 [admitting that A&S sold its "Natural Instant Pastry Creme" to Poppies]). A&S's "Natural Instant Pastry Creme" is a dairy-based, dehydrated powder intended to be hydrated, mixed and used as an ingredient in cream filling for pastries and other food and dessert products. (56.1 Stat., ¶ 10). A&S sells its "Natural Instant Pastry Creme" as a food product for use in the production of certain food products. (56.1 Stat., ¶ 20).

A&S uses dehydrated milk powder as an ingredient in its "Natural Instant Pastry Creme," and to produce its "Natural Instant Pastry Creme," (56.1 Stat., ¶¶ 11, 13); and purchased dehydrated milk powder that was produced by Valley Milk. (*Id.*, ¶ 12).

A&S's website, at the internet address https://us.komplet.com/quality, provides, *inter alia*:

> "Quality starts with raw materials[.]

3

> Proper nutrition is essential for a healthy life, full of vitality. This is why standards for our food simply cannot be high enough.
>
> We take these requirements very seriously, and test our raw materials with special care and diligence. After all, they are key to the quality of the end product."

(56.1 Stat., ¶ 19).

Between April and November 2016, Poppies placed five (5) orders (the "Orders") with A&S via email for delivery of between eight hundred (800) and eight hundred eighteen (818) fifty (50)-pound bags of A&S's "Natural Instant Pastry Creme" to Poppies' Battleboro Facility. (56.1 Stat., ¶¶ 21-23). In response to each of Poppies' Purchase Orders, A&S sent it an invoice requesting payment for the corresponding Order (the "Invoices"), (Plf. 56.1, ¶ 24), which confirmed the orders. (*Id.*, ¶ 25). A&S shipped the "Natural Instant Pastry Creme" to Poppies' Battleboro Facility, (*id.*, ¶ 26), and Poppies paid for each of the Orders. (*Id.*, ¶ 27).

On November 18, 2016, the United States filed a Complaint for Forfeiture In Rem (the "Valley Milk Complaint") to seize all of Valley Milk's dry milk powder products because of potential *Salmonella* contamination. (56.1, ¶ 28). *Salmonella* is a bacteria which can cause serious illness or death in human beings. (*Id.*, ¶ 42).

The Valley Milk Complaint indicates, in relevant part: (i) that during an inspection by the United States Food & Drug Administration ("FDA") of Valley Milk from July 26, 2016 to September 15, 2016 (the "2016 Inspection"), (A) Robert D. Schroeder, Valley Milk's Plant Manager, indicated that the dry milk powder manufacturing process included, *inter alia*, separating "[r]aw 'fluid milk' . . . into cream and skim milk," which is pasteurized, condensed and then "powdered by passing it through a dryer" and "that the drying step was not validated as a *Salmonella* kill-step," (Affidavit of Bobby Davis ["Davis Aff."], Ex. I, ¶ 13), and (B) the

4

FDA's analysis of three (3) environmental swabs, two (2) from a food contact surface and one (1) from a bag room floor drain, confirmed the presence of a particular strain of *Salmonella*, (*id.*, ¶¶ 12, 15); (ii) that the presence of *Salmonella* in Valley Milk's "finished product samples demonstrate that cross contamination and transfer of the pathogen from the manufacturing environment to the finished product may have occurred[,] . . . [and] that [Valley Milk's] sanitation practices are inadequate to control or eliminate [*Salmonella*] in their processing environment. . ." (*id.*, ¶ 16); (iii) that Valley Milk's records showed (A) "that seventeen (17) finished product lots tested positive for [*Salmonella*] between July 2014 and September 2016," (*id.*, ¶ 17), (B) that environmental samples analyzed by Valley Milk between July 2014 and August 2016 "resulted in thirty-four (34) positive findings" for *Salmonella* and *Listeria*, (*id.*, ¶ 18), (C) "that four (4) food contact surfaces on the powdered milk line were swabbed and tested positive for [*Salmonella*] between November 2015 and July 2016," (*id.*, ¶ 19), and (D) that the dryer had not been fully cleaned since November 2015, (*id.*, ¶ 23); and (iv) that the presence of *Salmonella* "on food contact surfaces and in the facility in general establishes th[at] area as an insanitary condition whereby the food articles may be rendered injurious to health." (*Id.*, ¶ 21).

In a letter dated December 7, 2016, with the heading "Notice of Recall of Milk Powder by [Valley Milk]" (the "A&S Letter"), A&S informed Poppies, *inter alia*, (i) "that some lot numbers of the ingredient, Non-Fat Dry Milk Powder, from Valley Milk . . . are currently under FDA investigation for possible *Salmonella* contamination;" (ii) that Valley Milk advised A&S that the FDA investigation "raised concerns regarding positive environmental tests for *Salmonella* and cast doubt on whether th[o]se ingredients may contain *Salmonella*;" (iii) that two (2) lot numbers received by A&S, H151221 and H151222, "were used to produce several [A&S]

5

products;" (iv) that "[e]very ingredient lot number received in [A&S's] plant had a COA [Certificate of Analysis] review . . . [and] [b]oth lot numbers in question showed testing for *Salmonella* as negative on the manufacturers [*sic*] COA;" and (v) that "[f]inished products produced with both ingredient lot numbers in question have been tested by an outside lab for *Salmonella* contamination and both came back negative." (Davis Aff., Ex. J). In addition, the A&S Letter, *inter alia*, purportedly attached a list of products Poppies purchased "which used the Non-Fat Dry Milk Powder Lot numbers in question," (*id.*); and advised "customers to put remaining product in question on hold and report holding stock quantities to [A&S]." (*Id.*). However, plaintiffs do not submit any records indicating that Lot Numbers H151221 and H151222 actually contained food products contaminated with *Salmonella*.

  A&S sent a spreadsheet to Poppies along with the A&S Letter (the "Product Spreadsheet") which identified sixty-six (66) transactions, involving eighteen (18) lot numbers and thirty-seven (37) Product IDs, for the "Natural Instant Pastry Creme" purchased by and delivered to Poppies by A&S through the Orders. (Davis Aff., Ex. K).

  Prior to being informed by A&S that the product it had purchased from A&S was potentially contaminated with *Salmonella* bacteria, Poppies had used the product in its production of frozen dessert pastries and had sold those pastries in the ordinary course of business. (Plf. 56.1, ¶¶ 36-37). After receiving notice of the possible contamination, Poppies ceased using the "Natural Instant Pastry Creme." (*Id.*, ¶ 38).

  On December 9, 2016, Valley Milk announced that it was recalling all fifty (50)-pound bags of nonfat high heat milk powder and sweet cream buttermilk powder that it produced between December 10, 2015 and July 5, 2016, (56.1 Stat., ¶ 39), "due to potential *Salmonella*

6

contamination, which was identified at the manufacturing facility but not in tested finished product." (Declaration of Christopher Priore ["Priore Decl."], Ex. B). Valley Milk's recall notice indicated, *inter alia*, "None of the recalled finished product tested positive for *Salmonella* but environmental sampling performed by the FDA was positive for *Salmonella*." (*Id.*).

According to plaintiffs, "[b]ased on the information provided by A&S regarding which lots of ["Natural Instant Pastry Creme"] were potentially contaminated with *Salmonella* bacteria," Poppies determined that one hundred twenty-eight thousand three hundred thirty-one (128,331) cases of mini eclairs and twenty-three thousand fifty-eight (23,058) cases of mini cream puffs had been produced using the potentially contaminated product, which would have had a retail value of approximately three million five hundred thousand dollars ($3,500,000). (Plf. 56.1, ¶¶ 40-41).

On December 13, 2016, Poppies notified the FDA that the potentially contaminated product had been used in the production of its frozen desserts. (Plf. 56.1, ¶ 49).

According to plaintiffs, they were required to recall frozen dessert pastries that were made with the potentially contaminated product and had been sold, (Plf. 56.1, ¶ 44); and were unable to sell any unsold frozen dessert pastries made with the potentially contaminated product. (*Id.*, ¶ 45; *see also Id.*, ¶ 54 [stating that Delizza's customers cancelled orders for purchase of the recalled products]). On December 16, 2016, plaintiffs issued a voluntary recall of all products that were made with the potentially contaminated product (the "Voluntary Recall Notice"), (*id.*, ¶¶ 47, 53), and directed all consumers who purchased or received the recalled products to return them to the place of purchase for a full refund. (*Id.*, ¶ 48). The Voluntary Recall Notice indicates, *inter alia*, "Although no pathogenic bacteria have been found in any of our ingredients or in any

7

of our products, we have decided to recall products produced using the affected ingredient from [Valley Milk]. No illnesses or adverse health effects resulting from these events have been reported to date." (Davis Aff., Ex. M). According to plaintiffs, they "were required to issue refunds to customers for pre-recall purchases of recalled mini eclairs and mini cream puffs. . . ." (Plf. 56.1, ¶ 55).

By letter dated January 17, 2017, *i.e.*, after the Voluntary Recall, the FDA informed Poppies, *inter alia*, (i) that it considered certain of plaintiffs' frozen dessert pastries, which had been manufactured from May 17, 2016 to December 3, 2016, and which Poppies had recalled beginning on December 14, 2016, "to have posed an acute, life-threatening hazard to health;" and (ii) that it had "designated this recall as Class I . . . based upon the finding of *Salmonella* in the milk powder ingredient used in th[o]se products." (Davis Aff., Ex. N). In its "Industry Guidance for Recalls," the FDA describes a Class I recall as "a situation in which there is a reasonable probability that the use of or exposure to a violative product will cause serious adverse health consequences or death." (*Id.*, Ex. O).

B.    Procedural History

On March 23, 2018, plaintiffs commenced this action against A&S pursuant to this Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). On June 18, 2018, plaintiffs filed an amended complaint against A&S seeking, *inter alia*, damages for A&S's alleged breach of contract and the implied warranty of merchantability. Issue was joined by the service of an answer on behalf of A&S on July 31, 2018.

On October 11, 2018, A&S filed a third-party complaint against Valley Milk seeking contribution and indemnification.

Plaintiffs now move for summary judgment on their claims against A&S pursuant to Rule 56 of the Federal Rules of Civil Procedure.

III.   Discussion[4]

   A.   Standard of Review

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)); *accord Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); *see also Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added) (internal quotations and citation omitted). "A fact is material if it 'might affect the outcome of the suit under the governing law[.]'" *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505).

---

[4] Unless otherwise noted, case quotations omit all internal quotation marks, citations, footnotes, and alterations.

9

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 109 (2d Cir. 2017) (quotations, alterations and citation omitted), and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quotations and citation omitted); *see also Hancock v. County of Rensselaer*, 882 F.3d 58, 64 (2d Cir. 2018) ("In determining whether there is a genuine dispute as to a material fact, we must resolve all ambiguities and draw all inferences against the moving party.") "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505); *accord Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875 F.3d 107, 113-14 (2d Cir. 2017). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci*, 557 U.S. at 586, 129 S. Ct. at 2677 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); *accord Baez v. JetBlue Airways Corp.*, 793 F.3d 269, 274 (2d Cir. 2015).

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); *accord Jaffer*, 887 F.3d at 114. "[W]hen the moving party has carried its burden[,] . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . [,]" *Scott v. Harris*, 550 U.S. 372,

10

380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (quoting *Matsushita Elec.*, 475 U.S. at 586-87, 106 S. Ct. 1348), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505); and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012); *see also Federal Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."); *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment[.]" (quotations, alterations and citations omitted)). Since "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (quotations and citations omitted).

11

B. Implied Warranty of Merchantability Claim

Section 2-314(1) of the New York Uniform Commercial Code ("U.C.C.") provides that, with exceptions not relevant here, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314(1). "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013) (quoting *Saratoga Spa & Bath v Beeche Sys. Corp.*, 230 A.D.2d 326, 330, 656 N.Y.S.2d 787 (N.Y. App. Div. 1997)). "A seller's implied warranty of merchantability or fitness extends to any party who may reasonably 'use, consume or be affected by the goods and who [are] injured in person by breach of the warranty.'" *Tomaselli v. Zimmer Inc.*, No. 14-cv-4474, 2017 WL 2820065, at *6 (S.D.N.Y. Jan. 20, 2017), *report and recommendation adopted*, No. 14-cv-4474, 2017 WL 1011492 (S.D.N.Y. Mar. 15, 2017), *aff'd sub nom Tomaselli v. New York & Presbyterian Hosp.*, 728 F. App'x 41 (2d Cir. Apr. 4, 2018) (quoting N.Y. U.C.C. § 2-318).

"[A] claim under UCC 2-314 cannot arise unless the goods sold are not of merchantable quality. For goods to be of merchantable quality they need to be reasonably fit for their intended purpose; they need not, however, be perfect." *Saratoga Spa*, 230 A.D.2d at 330, 656 N.Y.S.2d 787; *see also Caronia*, 715 F.3d at 433-34 ("A merchant breaches the UCC implied warranty of merchantability if it sells goods that are not 'fit for the ordinary purposes for which such goods are used,' N.Y. U.C.C. § 2–314(2)(c). This standard does not require that the goods be perfect, . . . or that they fulfill a buyer's every expectation; . . . it requires only that the goods sold be of a minimal level of quality.") The inquiry focuses on the "expectations for the performance of the

12

product when used in the customary, usual and reasonably foreseeable manners." *Caronia*, 715 F.3d at 434 (quoting *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258-59, 639 N.Y.S.2d 250, 662 N.E.2d 730 (N.Y. 1995)).

"Upon a showing that a product is not minimally safe for its expected purpose, a plaintiff may recover under New York law for a breach of implied warranty." *Morrison v. Hoffmann-La Roche, Inc.*, No. 14-cv-4476, 2016 WL 5678546, at *11 (E.D.N.Y. Sept. 29, 2016). Generally, "[w]hether there was a breach is a factual question for jury determination." *Pronti v. DML of Elmira*, 103 A.D.2d 916, 917, 478 N.Y.S.2d 156 (N.Y. App. Div. 1984); *see also Emerald Painting, Inc. v. PPG Indus., Inc.*, 99 A.D.2d 891, 892, 472 N.Y.S.2d 485 (N.Y. App. Div. 1984) ("[T]he issues of warranty and breach thereof are generally questions of fact for the jury to resolve.")

"Where the sale of a food or beverage is concerned, courts have ruled that the product must be fit for human consumption to be of merchantable quality." *Mongiello's Italian Cheese Specialties, Inc. v. Euro Foods Inc.*, No. 14-cv-2902, 2018 WL 4278284, at *37 (S.D.N.Y. Mar. 30, 2018); *accord Silva v. Smucker Nat. Foods, Inc.*, No. 14-cv-6154, 2015 WL 5360022, at * 11 (E.D.N.Y. Sept. 14, 2015).

Plaintiffs have sufficiently established that Poppies entered into a contract with A&S based upon the purchase orders and invoices between them, pursuant to which A&S was to sell its "Natural Instant Pastry Creme" to Poppies for use in Poppies' products. *See* N.Y. U.C.C. § 2-206. If A&S sold Poppies any "Natural Instant Pastry Creme" that was in fact contaminated with *Salmonella*, the product would not be fit for its "particular use" and, thus, would constitute a breach of the implied warranty of merchantability. *See, e.g. Mongiello's*, 2018 WL 4278284, at *

13

38 (finding that the plaintiff met its burden of establishing that the defendant breached the implied warranty of merchantability since it demonstrated that the defendant sold it meat that was contaminated with *Listeria monocytogenes*).

However, plaintiffs have not satisfied their burden of showing the absence of a genuine dispute of material fact as to whether a defect existed in the "Natural Instant Pastry Creme" when it was sold and delivered to Poppies, *i.e.*, whether the product A&S sold to it was actually contaminated with *Salmonella* so as to render it unfit for its particular use. The evidence in the record indicates only that the "Natural Instant Pastry Creme" was potentially contaminated with *Salmonella*, but all of the testing of the actual product was negative for such contamination. Accordingly, plaintiffs have not established their entitlement to judgment as a matter of law on their breach of the implied warranty of merchantability claim. *See, e.g. Fisons Corp. v. Sweeteners Plus, Inc.*, 258 A.D.2d 872, 873, 684 N.Y.S.2d 739 (N.Y. App. Div. 1999) (holding that the plaintiff failed to meet its initial burden of establishing as a matter of law that the product delivered by the defendant could not be used in the plaintiffs' products, particularly since it "failed to establish that the recall of its products was required by the [FDA].") Therefore, at this juncture, the branch of plaintiffs' motion seeking summary judgment on their breach of implied warranty of merchantability claim against A&S is denied.

    C.    Breach of Contract Claim

"In order to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by

14

that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011); *accord Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004).

Plaintiffs' breach of contract claim is premised upon A&S's alleged delivery of defective goods to Poppies. As indicated above, plaintiffs established that Poppies entered into a contract with A&S based upon the purchase orders and invoices between them, pursuant to which A&S was to sell its "Natural Instant Pastry Creme" to Poppies for use in Poppies' products. However, other than the implied warranty of merchantability, plaintiffs have not sufficiently established any essential terms of the agreements between Poppies and A&S which A&S allegedly breached and, thus, have not established their entitlement to judgment as a matter of law on their breach of contract claim. *See, e.g. Fossil Indus., Inc. v. Arjo Wiggins, USA, Inc.*, No. 12-cv-2497, 2015 WL 5356453, at * 6 (E.D.N.Y. Sept. 12, 2015); *see also Ramiro Aviles v. S&P Global, Inc.*, 380 F. Supp. 3d 221, 305 (S.D.N.Y. 2019) (dismissing a breach of contract claim for failure to indicate the specific contractual duties that were violated); *Martinez v. Vakko Holding A.S.*, No. 07 Civ. 3413, 2008 WL 2876529, at * 2 (S.D.N.Y. July 23, 2008) ("A breach of contract claim will be dismissed where a plaintiff fails to allege the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated."); *Kraus v. Visa Int'l Serv. Ass'n*, 304 A.D.2d 408, 408, 756 N.Y.S.2d 853 (N.Y. App. Div. 2003) (affirming the dismissal of the plaintiff's breach of contract claims for failure "to allege the breach of any particular contractual provision.") Contrary to their contention, plaintiffs have not submitted sufficient evidence of any express contractual provision requiring A&S to "deliver Instant Pastry Cream that was useable, non-contaminated, non-defective, and complied with all laws and

15

regulations applicable to food ingredients and food products sold for human consumption." (Plaintiffs' Reply Memorandum of Law in Further Supports of the Motion for Summary Judgment at p. 3 [citing Am. Compl., ¶¶ 96-97]). Accordingly, the branch of plaintiffs' motion seeking summary judgment on their breach of contract claim against A&S is denied.

IV.     Conclusion

For the reasons set forth above, plaintiffs' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is denied in its entirety.

SO ORDERED.

           ___/s/ *Sandra J. Feuerstein*___
           Sandra J. Feuerstein
           United States District Judge

Dated:  March 31, 2020
       Central Islip, New York